Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York

1:21-cv-00443

Michael Fleischer, individually and on behalf of all others similarly situated,

     Plaintiff,

   - against -

Aldi Inc.,

     Defendant

Complaint

   Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

   1.  Aldi Inc. ("defendant") manufactures, distributes, markets, labels and sells "Smoked White Cheddar – Deli Sliced Cheese" ("Product") to consumers from its over 2,000 grocery stores in the United States.



2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3. The drying action of the smoke and the different phenol compounds present in wood smoke helps to preserve the protein-rich foods such as meat, cheese and fish.

4. The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

2

5. The earliest written records of smoked cheese comes from Roman times, when an owner of a cheese shop was forced to share space in the Roman market with a baker.

6. It was observed that the baker's wood burning fire gave a distinct flavor to the cheese which varied based on the type of wood that was used.

7. For example, hickory wood chips – from deciduous hardwood trees of the genus *Carya* – are often used for providing hearty yet sweet flavors to cheese and meat ("hickory").

8. Pecan wood, a type of hickory, gives cheese a spicy and nutty taste.

9. Oak provides smoked flavors of moderate intensity, between fruit woods and hickory.

10. While the popularity of smoking decreased in the mid-20th century due to the introduction of "convenient" chemical preservatives, the last two decades have seen a resurgence in smoked foods, as consumers embrace foods made without advanced chemistry and synthetic ingredients.

11. According to reports out of Wisconsin, the capital of the nation's cheese production, the "volume on the smoked cheeses just continues to grow every year. People are seeking bigger flavors, bolder flavors, deeper flavors."[1]

12. Cheese industry observers "say smoked cheeses are on the rise, stoked by general excitement about bacon and other smoked foods."[2]

13. The alternative to using real wood to smoke cheese is using a "smoke flavor," which is "smoke condensed into a liquid form."[3]

---

[1] Kimberly L. Jackson, Smoked cheese: Growth stoked by demand for bolder flavors, Newark Star-Ledger, Dec 30, 2014, Updated Mar 29, 2019.
[2] *Id*.
[3] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

14. While this development made it more convenient to enjoy "smoked" foods, it fails to supply the rich, layered taste provided by phenols and other odor-active compounds present when a food is smoked.

15. Liquid smoke flavor also contains numerous additives and has been associated with detrimental health impacts.

16. Whether a food is flavored by "liquid smoke flavor" or from being smoked is information consumers rely on when making quick purchasing decisions at the grocery store.

17. They will look at the food's front label and see the name of the food, i.e., Smoked White Cheddar Cheese, and expect they are buying cheddar cheese which has been smoked. 21 C.F.R. § 101.3(b)(2) (requiring front label to state "common or usual name" of a food).

18. Where a food is labeled as having a main flavor, consumers expect to be told basic information on the front of the product about the source of that flavor. 21 C.F.R. § 101.22(i)(1).

19. This information includes whether (1) a food has flavor from the "real" thing, i.e., being smoked, (2) the product contains added flavor *from* the named process (or flavor) even though it was not subject to that process, i.e., natural smoked flavor and (3) the flavor come from artificial, synthetic sources, i.e., pyroligneous acid or artificial smoke flavor. 21 C.F.R. § 101.22(i); 21 C.F.R. § 101.22(h)(6).

20. These flavor regulations have established custom and practice so that consumers' experience primed them to infer from a product's labeling whether a flavor was entirely from the characterizing ingredients or not.

21. Most foods contain disclosures such as "naturally flavored," "other natural flavors" or "artificially flavored."

22. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers

value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[4]

23. Consumers prefer foods that are flavored from an ingredient or a natural production process, instead of by the essential oil, captured and refined "liquid smoke" and extractives – made in a laboratory – for reasons including nutrition, health and the avoidance of additives and highly processed ingredients.[5]

24. Since the food is labeled as "Smoked White Cheddar Cheese," consumers expect its smoked flavor is from being smoked over wood chips.

25. However, the Product's smoked flavor is not from being smoked over wood chips, but from added "liquid smoke" flavor, identified as "natural smoke flavor" on the ingredient list.

**INGREDIENTS:** PASTEURIZED MILK, CHEESE CULTURES, SALT, MICROBIAL ENZYMES, NATURAL SMOKE FLAVOR.

26. Consumers are misled because the front label fails to tell them what the Product is – "Natural Smoke Flavored White Cheddar Cheese" – in violation of the requirements of federal and state law. 21 U.S.C. § 343(i); 21 C.F.R. § 101.22(i)(1)(i).

27. The FDA has warned companies that fail to accurately inform consumers of foods

---

[4] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[5] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[6]

28. The FDA has highlighted cheddar cheese products that "fail to declare the common or usual name of the food," such as "Smoked [White] Cheddar Cheese."[7]

29. According to the FDA, it is misleading to identify a "product that is not smoked, but rather contains smoke flavor in accordance with 21 CFR 101.3(b)," as "Smoked [White] Cheddar Cheese." 21 U.S.C. § 343(i)(1).

30. Smoked white cheddar cheese slices that gets its smoked taste from being smoked is not a rare or pricy delicacy that would make a reasonable consumer "double check" the veracity of the front label claims.

31. Because the front label contains no qualification such as flavor, flavored, natural smoke flavor, artificial smoke flavored, no reasonable consumer would be so distrustful or skeptical of the "Smoked White Cheddar Cheese" statement to scrutinize whether the ingredient list disclosed "smoke flavor." *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

32. Even if consumers were to view the ingredient list, a reasonable consumer would have no reason to know that listing "natural smoke flavor" forecloses the possibility the Product was also subject to *some* smoking.

33. However, the Product has not undergone *any* smoking, which is deceptive and misleading to consumers who expected some smoking of the cheese.

---

[6] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.
[7] FDA Warning Letter, Middlefield Original Cheese Coop, MARCS-CMS 500180 – August 29, 2016.

34. Defendant's branding, marketing and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

35. The amount and presence of real smoked flavor from smoking is material to plaintiff and consumers.

36. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

37. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

38. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

39. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $4.29 per 8 OZ compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

40. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

41. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

42. Plaintiff Michael Fleischer is a citizen of New York.

43. Defendant Aldi Inc. is a Illinois corporation with a principal place of business in Batavia, Kane County, Illinois and a citizen of Illinois.

7

44. "Minimal diversity" exists because plaintiff Michael Fleischer and defendant are citizens of different states.

45. Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

46. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Parties

47. Plaintiff Michael Fleischer is a citizen of Brooklyn, Kings County, New York.

48. Defendant Aldi Inc. is a Illinois corporation with a principal place of business in Batavia, Illinois, Kane County.

49. Defendant operates over 2,000 grocery stores in over 36 states.

50. Defendant's products are known to be of the highest quality, because of its efficiency that enables it to secure private label versions of the highest end products.[8]

51. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within his district and/or State in reliance on its representations and omissions.

52. Plaintiff purchased the Product on one or more occasions including but not limited to between June and August 2020, at defendant's grocery store, including the location at 3785 Nostrand Ave, Brooklyn, NY 11235.

53. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon its front label representations.

54. Plaintiff was deceived by and relied upon the Product's deceptive labeling and

---

[8] *See* article "This is Not Your Parent's Store Brand."

marketing.

55. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would have paid less for it.

56. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components and attributes.

## Class Allegations

57. The classes will consist of all purchasers of the Product who reside in all states except for Illinois, California, Massachusetts and New Jersey during the applicable statutes of limitations.

58. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

59. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

61. Plaintiff is an adequate representative because his interests do not conflict with other members.

62. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65. Plaintiff seeks class-wide injunctive relief because the practices continue.

### New York General Business Law ("GBL") §§ 349 & 350 and Consumer Protection Statutes of Included States

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers.

68. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

69. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or nutritional attributes of the Product.

70. The Product's purported smoking over wood chips had a material bearing on price and consumer acceptance of the Product.

71. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

72. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Defendant had a duty to disclose the amount and presence of the characterizing ingredient – *added* smoke flavor – on the front label as part of the Product's name, to not mislead consumers who do not scrutinize the ingredient list.

75. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

76. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

77. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

79. Plaintiff incorporates by reference all preceding paragraphs.

80. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, organoleptic, nutritional, and/or compositional attributes it did not.

81. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

82. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

83. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

84. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product or those of the type described here.

85. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiffs expected a product that was described by Defendant.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Defendant's fraudulent intent is evinced by its failure to accurately represent the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.

89. Defendant was motivated by increasing its market share against competitor products.

90. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

91. Plaintiff incorporates by reference all preceding paragraphs.

92. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages under the GBL and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 27, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:21-cv-00443
United States District Court
Eastern District of New York

Michael Fleischer, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Aldi Inc.,

Defendant

Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 27, 2021

/s/ Spencer Sheehan<br>Spencer Sheehan